In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 06-2192

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE P. DABNEY,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 576—**John W. Darrah**, *Judge.*

---

ARGUED JANUARY 10, 2007—DECIDED AUGUST 2, 2007

---

Before POSNER, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Willie Dabney was convicted of
being a felon in possession of a firearm in violation of 18
U.S.C. § 922(g)(1) and sentenced to the statutory maxi-
mum of 120 months. Dabney challenges the introduc-
tion at trial of evidence regarding his prior admission in
state court to possessing the firearm in question. He
further maintains that both the district court and the
government violated his rights under *Brady v. Maryland*,
73 U.S. 83 (1963), that there was insufficient evidence to
support his conviction, and that his sentence failed to
adequately reflect the factors set forth in 18 U.S.C.
§ 3553(a)(2). We affirm his conviction and his sentence.

## I. Background

Late on the night of December 31, 2004, and into the early morning hours of January 1, 2005, Chicago Police Officers Ronald Coleman and Joshua Wallace responded to a radio call of shots fired in their patrol area. After exiting his vehicle, Coleman heard a series of gunshots and saw the defendant, Willie Dabney, firing a handgun approximately 30-40 yards away. With Coleman in pursuit and closing the distance between them, Dabney ran toward a nearby apartment building, firing two shots into the air along the way. After entering the building through a locked gate, Dabney dropped his gun and entered a second-floor apartment. Around the same time, Wallace arrived and helped Coleman climb onto the second-floor landing of the apartment building, where Coleman recovered Dabney's gun. Coleman then gained entry into the apartment he had seen Dabney enter and found Dabney hiding under the bed. Dabney was arrested and pleaded guilty to a state charge relating to his possession of the gun Coleman had recovered. He was then charged with one federal count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Prior to trial on the federal charge, Dabney moved in limine to bar any reference to his state-court guilty plea, arguing that admission of the plea would be unfairly prejudicial. The district court held that the government could not reference the guilty plea itself but could introduce evidence that Dabney had previously admitted under oath that he possessed the firearm on the date in question. Based on this ruling, the parties entered into the following stipulation:

> In 2005, while under oath and with the assistance and presence of an attorney, the defendant, Willie Pierre Dabney, admitted that on January 1st, 2005, he possessed the same firearm as charged in the indict-

ment; namely, A Glock model 17 C, bearing serial number CBT749, and that at the time of his possession the defendant had previously been convicted of a felony offense.

On the day trial was scheduled to begin, the government disclosed in response to a recent discovery request that it had just learned of an individual who had made two allegations of misconduct against Officers Coleman and Wallace. Both concerned incidents in which the officers allegedly released individuals from traffic stops in exchange for cash. The government indicated it had no substantiating information but requested an extended continuance to investigate further. Because jury selection had already begun, the district court granted only a one-day continuance and instructed the government to look for any other complaint material in its possession regarding the two officers.

After the one-day recess, the government informed the court that it had 29 or 30 complaint registers for the two officers. Only one complaint was substantiated, against Coleman for a self-reported instance of inattention to duty during a narcotics inventory proceeding. There was also one pending investigation regarding a complaint that Wallace had struck someone on the head with a gun while executing a search warrant and that $2950 in cash had gone missing after the search. The government took the position that it need only turn the remaining complaints over for in camera review since they had all been deemed unsubstantiated. The district court held that the sustained and pending complaints were inadmissible extrinsic evidence of prior conduct under Rule 608 of the *Federal Rules of Evidence*. Dabney then asked to review all of the remaining complaint registers, or at least to have the court review them in camera. Based on the government's representation that the remaining com-

plaints were unsubstantiated, the district court denied both requests.

The trial then continued, and the government introduced the stipulation regarding Dabney's prior admission to possessing the gun, along with testimony from Coleman and Wallace regarding the events on the night in question. The jury found Dabney guilty; he was sentenced to 120 months in prison, the statutory maximum for his offense. Dabney now appeals both the conviction and the sentence.

## II. Discussion

### A. Admission of Stipulation

Dabney first contends that the district court erred by allowing into evidence his admission, in the prior state-court proceeding, that he possessed the gun in question on the night in question. He argues that his prior admission was inadmissible because it created a danger of "unfair prejudice [or] confusion of the issues." *See* FED. R. EVID. 403. We review a district court's ruling on the admissibility of evidence for abuse of discretion. *United States v. Aldaco*, 201 F.3d 979, 985 (7th Cir. 2000).

The parties entered into the stipulation regarding Dabney's state-court admission after the district court's split ruling on Dabney's motion in limine, excluding evidence of the guilty plea itself but allowing evidence of Dabney's state-court admission to possessing the gun. The admission was certainly compelling evidence of Dabney's guilt, but there was nothing unfairly prejudicial about it. "'Unfair prejudice' refers to 'the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged.'" *United States v. Coleman*, 179 F.3d 1056, 1062 (7th Cir. 1999) (citing *Old Chief v. United States*, 519 U.S. 172, 180 (1997))). It is hard to

imagine proof more specific to the offense charged than the defendant's own admission under oath to the essential facts constituting the offense.

The district court diminished any possibility of confusion regarding the separate state and federal judicial proceedings by taking the unnecessary precaution of excluding any reference to the fact that Dabney's statements were made during a guilty plea hearing. *See United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993) (state-court guilty pleas are admissible as party admissions in subsequent federal court proceedings). The district court was well within its discretion in admitting the evidence of Dabney's state-court admission.

## B.  *Brady* Allegations

Dabney maintains that his rights under *Brady v. Maryland*, 73 U.S. 83 (1963), were violated by the district court's failure either to further investigate the complaints pending against the testifying officers or to require the government to turn over all of the unsubstantiated complaint registers in its possession. We review a district court's determination that disputed evidence need not be produced under *Brady* for abuse of discretion. *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002).

The Supreme Court held in *Brady* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 73 U.S. at 87. This holding places no investigative obligation on *courts*, but rather only mandates that *the prosecution* must turn over all potentially exculpatory evidence in its possession. *Id*. As such, Dabney's first argument fails because the district court was under no independent duty to further probe or investigate the pending com-

plaints against the officers that were identified by the government. *See, e.g.*, *United States v. Mitchell*, 178 F.3d 904, 908 (7th Cir. 1999) (collecting cases rejecting the notion that *Brady* places discovery obligations upon courts).

We turn, then, to Dabney's claim that the district court should have ordered the disclosure of the remaining complaint registers, either to Dabney directly or to the court for in camera review. Dabney can only demonstrate a *Brady* violation if the evidence the government allegedly suppressed "is both favorable to the accused and material to the issue of guilt or punishment." *United States v. Bastanipour*, 41 F.3d 1178, 1181 (7th Cir. 1994). "There is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999).

Although the prosecution's *Brady* obligation extends to impeachment evidence, *Giglio v. United States*, 405 U.S. 150 (1972), Dabney provides no support for his assertion that the remaining, unsubstantiated complaint registers contained admissible impeachment evidence. Because extrinsic evidence cannot be introduced to prove specific conduct attacking a witness's credibility, FED. R. EVID. 608(b), the complaint registers would have been inadmissible to rebut the officers' denials of the allegations. *See United States v. Veras*, 51 F.3d 1365, 1375 (7th Cir. 1995) (suppressed misconduct allegation against police officer witness was not material because inadmissible under Rule 608(b)).

Moreover, although the district court decided in camera review was unnecessary, the government's offer to turn the documents over for such review "negates any argument that the government suppressed favorable or material

information." *Bastanipour*, 41 F.3d at 1182. Finally, given Dabney's own admission to possessing the firearm, there is no serious possibility that disclosure of the complaints—whatever their content—would have led to a different verdict. Accordingly, the district court did not abuse its discretion by denying Dabney's *Brady* requests.

## C. Sufficiency of the Evidence

Dabney also challenges the sufficiency of the evidence to support his conviction. We review a sufficiency of the evidence challenge "by considering the evidence in the light most favorable to the government, deferring to the credibility determinations of the jury, and . . . overturn[ing] a verdict only when the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Cummings*, 395 F.3d 392, 397 (7th Cir. 2005). On this record, a challenge to the sufficiency of the evidence is frivolous. Dabney's admission under oath to possessing the gun was corroborated by the testimony of the officers who chased and apprehended him. Dabney identifies only minor, immaterial inconsistencies in the officers' testimony. The evidence supporting this conviction is overwhelming.

## D. Sentencing

Dabney was sentenced to 120 months, which is the statutory maximum for the offense and falls within the advisory sentencing guidelines range of 100-125 months. Dabney does not challenge the guidelines calculation, but rather maintains the sentence was not reasonable because the district court failed to adequately consider the factors set forth in 18 U.S.C. § 3553(a). The Supreme Court has recently held that appellate courts may apply a

presumption of reasonableness to sentences imposed within a properly calculated guidelines range. *Rita v. United States*, 127 S. Ct. 2456 (2007). In doing so, the Court noted that it is important for a sentencing judge to set forth his reasons for imposing a particular sentence "to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 2468.

Contrary to Dabney's assertion, the district court's sentencing determination was adequately explained and soundly reasoned. The court cited numerous § 3553(a) factors, including Dabney's nine previous convictions for conduct ranging from drug possession to aggravated battery of a police officer, the failure of prior terms of imprisonment to alter his criminal behavior, and the danger he caused by firing his weapon on the night in question. The maximum sentence imposed here was amply justified and entirely reasonable.

Finally, in his reply brief Dabney raised for the first time the argument that he would have pleaded guilty had the government not mistakenly asserted prior to trial that it would seek to have him sentenced as an armed career criminal. Accordingly, he asserts, he would have received a three-point reduction for acceptance of responsibility. This is the first mention of this argument, which Dabney provides no legal authority to support. Because the argument was not raised or developed in the opening brief, it is waived. *See United States v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999).

AFFIRMED.

A true Copy:

    Teste:

                              _____

                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*