In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1896

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES STATES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 cr 464-6—**Ronald A. Guzman**, *Judge.*

ARGUED MARCH 30, 2011—DECIDED JULY 19, 2011

Before FLAUM, WOOD, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Charles States was a member of the Carman Brothers Crew, a group comprised of members and former members of the Latin Kings and Vice Lords gangs. Along with other defendants, States was convicted of a host of criminal charges in relation to the crew's activities. The racketeering charges netted him three life terms of incarceration. On appeal, States argues that he is entitled to a new trial because certain self-

incriminating statements he made were elicited in violation of the Fifth and Sixth Amendments to the United States Constitution. He also urges that he suffered prejudice when all of the counts with which he was charged were tried before a single jury. As a fallback, he asks for re-sentencing. We affirm.

## I. Background

Charles States was a member of the Carman Brothers Crew. The group trafficked in illegal narcotics and was formed (among other reasons) to obtain drugs, money, and other property by force. The means they adopted to accomplish these ends included violent kidnappings, robbery, and extortion. For example, sometime around July 2001, the crew abducted a drug dealer and stole illegal narcotics and firearms from him. During that incident, States forced the victim into a car, striking him with the butt of a handgun as he did so. The victim was subsequently bound and tied to a metal pole during the kidnapping, and States stood watch. For his involvement, he reaped a payment of approximately one kilogram of cocaine, which he ultimately sold for approximately $21,000. The next month, States participated in three more kidnappings, part of an effort to recover drugs that had been stolen from the crew. The crew threatened one of the victims with murder, held him for seven days handcuffed to a bed frame, and stole his Rolex watch. States shot and killed the victim's dog and was paid for his involvement with the hijacked timepiece.

In May 2002, the government filed a criminal complaint with a federal magistrate judge in order to obtain an arrest warrant for States and five other members of the Carman Brothers Crew. *See* Fed. R. Crim. P. 3 & 4 (describing the complaint and its function in establishing probable cause for one or more arrest warrants). The magistrate judge issued arrest warrants for States and five others.

Five months later, in October 2002, two federal agents and three Chicago police officers attempted to take States into custody. They showed up at his apartment, knocked, and announced their presence. States responded with a hail of gunfire through the door. (Of the five rounds he discharged, one struck a police officer in the hand.) The agents and officers responded in kind and States quickly gave himself up. He was taken into custody. Several hours after his arrest, States was questioned. The statements he made, admitted at trial through the testimony of an FBI agent who participated in the interrogation, proved self-incriminating. According to the agent, States received *Miranda* warnings and waived his right to counsel. He then admitted to and described his participation in kidnappings. The goal of the abductions was to obtain drugs from rival drug organizations. In addition, States admitted to cooking up—that is, manufacturing—crack cocaine. As for the circumstances surrounding his arrest, States tried to explain that after hearing loud knocks at his door, he peered out a window and did not see any police cars. Apparently concerned that his security was being threatened, he grabbed a weapon, aimed it at the door, and

fired several rounds through the door. Only after fire was returned, States told the agent, did he hear the officers make their affiliation with law enforcement known to him.

After his arrest, a grand jury returned an indictment and then a superseding indictment in the case. The lengthy charging document named States in 12 of 28 counts. Ten of the counts related to States's conduct prior to his arrest: racketeering, in violation of 18 U.S.C. § 1962(c); conspiring to commit racketeering, in violation of 18 U.S.C. § 1962(d); conspiring to possess a controlled substance with intent to distribute it, in violation of 21 U.S.C. § 846; two counts of possessing a controlled substance with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1); committing extortion, in violation of 18 U.S.C. § 1951; three counts of possessing a firearm in relation to drug offenses or crimes of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and possessing firearms with obliterated serial numbers, in violation of 18 U.S.C. § 922(k). Two counts were based on the fact that States did not go gently into federal custody: he was charged with attempting to kill a federal agent, in violation of 18 U.S.C. § 1114, and with the federal analogue to resisting arrest, in violation of 18 U.S.C. § 111(a)(1) & (b).

Prior to trial, States moved to suppress the post-arrest statements he made to law enforcement, arguing that his statements were elicited in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. The district court

rejected States's Sixth Amendment argument outright, ruling that the right to counsel was not triggered by his arrest and interrogation. States's Fifth Amendment argument, which was that he invoked (but was denied) his right to counsel prior to making self-incriminating statements, was referred to a magistrate judge for an evidentiary hearing. The magistrate judge recommended denying the suppression motion; he believed the testimony of several law enforcement officers who said that States never requested a lawyer. The district court adopted the report and recommendation.

The case went to a jury, and States was convicted of each of the 12 counts with which he was charged. States filed a post-trial motion with the district court seeking a new trial, arguing for the first time that the charges related to his racketeering and drug trafficking activities should not have been joined with the charges related to his arrest and possessing firearms with obliterated serial numbers. The district court denied the motion along with one other motion not implicated in this appeal. Thereafter, the district court ordered that States be given a top-of-the-guidelines sentence of three concurrent life terms in prison. In addition, and by operation of statute, States was sentenced to a consecutive term of imprisonment of 57 years for his violations of 18 U.S.C. § 924(c)(1)(A), using a firearm in relation to a drug trafficking offense or crime of violence.

## II. Discussion

On appeal, States argues that the district court erred by refusing to suppress the post-arrest statements he made

to police, statements which he says were elicited in violation of the Fifth and Sixth Amendments to the United States Constitution. He also maintains that he is entitled to a new trial because the counts against him were misjoined or because joinder was prejudicial. At a minimum, he urges that he should be re-sentenced because the judge improperly ordered part of his sentence to run consecutively with his life terms of imprisonment and failed adequately to consider statutory sentencing factors. We take up each argument in turn.

## A. Suppression of Post-Arrest Statements

When reviewing a district court's ruling on a motion to suppress evidence, we review conclusions of law de novo and findings of fact for clear error. *United States v. Vasquez*, 635 F.3d 889, 894 (7th Cir. 2011). The Sixth Amendment challenge he makes raises a pure issue of law. The particular Fifth Amendment challenge he makes, however, turns on whether States invoked his *Miranda* rights when he was subjected to custodial interrogation. That is a largely fact-driven inquiry. *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998) (teaching that whether a custodial interrogation occurred is reviewed de novo but that "historical" facts are reviewed for clear error). "A factual finding is clearly erroneous only if, after considering all the evidence, we cannot avoid or ignore a definite and firm conviction that a mistake has been made." *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir. 2010) (quotation marks omitted). In addition, we are particularly reticent to call into ques-

tion a lower court's credibility determinations, formed as they were after the opportunity to listen to testimony and observe witnesses. *E.g.*, *United States v. Villalpando*, 588 F.3d 1124, 1127 (7th Cir. 2009); *United States v. Groves*, 530 F.3d 506, 510 (7th Cir. 2008).

### 1. Fifth Amendment

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." States's chief contention is that his confession was taken in violation of the prophylactic constitutional rule announced in *Miranda v. Arizona*, 384 U.S. 436 (1966). When a person is subject to custodial interrogation, law enforcement must first provide that case's familiar, eponymous warnings. Thereafter, questioning must cease if the person indicates that he wishes to remain silent or desires an attorney's presence. *Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010). States contends that he was taken into custody, subjected to interrogation, and invoked his right to remain silent. Because questioning did not cease, the statements he made should be suppressed. His argument is theoretically sound, but is undermined by the finding that States's testimony at the suppression hearing was not credible. Although States maintains that the finding was clear error, he does not explain why.

Indeed, States's brief devotes itself primarily to recounting the version of events as supplied by his testimony at the suppression hearing. Here is the testimony: After being handcuffed, he says he was kicked in the head one

or more times by the officer he shot (or by another offi-
cer). Then, while in a police car at the arrest scene,
States had to fend off two attempts to ask him questions
about the shooting. He invoked his right to remain silent.
After he was brought to the police station, the FBI and
police subjected him to various strong-arm tactics. He
was denied access to a bathroom and was forced to
urinate in the room to which he was confined. When
FBI agents first asked him if he was "ready" to talk, States
said he needed a lawyer. Undaunted, agents kept ques-
tioning him. Only later, he says, were *Miranda* warnings
read to him. The problem for States is two-fold. First,
the testimony of numerous law enforcement officers
varied markedly from States's version. Simply put, they
said that no one kicked States or questioned him at the
arrest scene, that States never asked for a lawyer, and
that they did not put the screws to him at any time.
More serious than the testimony by law enforcement,
of course, is the magistrate judge's acceptance of it. Criti-
cally, the magistrate judge concluded that the testimony
of the law enforcement officers was credible and that
States's testimony was not. The thorough report and
recommendation, which reviewed the evidence offered
at the suppression hearing and which was subsequently
adopted by the district court, concluded that no
one interrogated States before he was given *Miranda*
warnings.

  In his brief to us, States does not present meaningful
argument about why the credibility determinations
and weighing of the evidence amounted to clear error.
Instead, he presupposes the truth of his own version

of events; that does nothing to explain why the evidence should leave us with the "definite and firm conviction that a mistake has been made." *Jackson*, 598 F.3d at 344. The extensive treatment in States' brief—rehearsing his version of events and expounding upon the importance of *Miranda*—is inadequate to the challenging task of establishing clear error. *See United States v. Terry*, 572 F.3d 430, 434 (7th Cir. 2009) ("We do not second-guess the judge's credibility determinations because he or she has had the best opportunity to observe the subject's facial expressions, attitudes, tone of voice, eye contact, posture and body movements.") (alterations omitted). We will not upset a credibility determination unless it is "completely without foundation." *E.g.*, *United States v. Huebner*, 356 F.3d 807, 812 (7th Cir. 2004). States does not meet that standard.

In addition to his argument that his statements were elicited in violation of *Miranda*, States contends for the first time on appeal that the statements were not voluntary. Specifically, he maintains that the statements were not voluntary because he was kicked in the head and questioned by law enforcement at the scene at a time when he was surrounded by numerous law enforcement officers. Because States did not raise the argument in the district court, it is subject to plain error review. *See* Fed. R. Crim. P. 52(b). In order to establish plain error, a defendant must show (1) that there was an error or defect that was not intentionally relinquished or abandoned; (2) the error was clear or obvious, "rather than subject to legal dispute"; and (3) the error affected

the defendant's substantial rights (generally, the out-
come). *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009)
(citing *United States v. Olano*, 507 U.S. 725 (1993)). When
all three prongs are established, we have "the *discretion*
to remedy the error—discretion which ought to be ex-
ercised only if the error seriously affects the fairness,
integrity or public reputation of judicial proceedings."
*Id.* (quotation marks and alterations omitted); *United
States v. Tanner*, 628 F.3d 890, 898 (7th Cir. 2010).

States cannot get past the first prong of plain error
review for the same reason his *Miranda*-based argument
fails—the twin findings that States's testimony was not
credible and that the testimony of law enforcement
officers was credible. To be sure, a confession that is not
obtained voluntarily violates the Fifth Amendment's
guarantee that no person shall be compelled in any crimi-
nal case to be a witness against himself. *Dickerson v.
United States*, 530 U.S. 428, 433 (2000) (recounting the
common-law roots and constitutional bases of the volun-
tariness test); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-
28 (1973) (inquiry is "whether a defendant's will was
overborne in a particular case" and turns on the totality
of the circumstances). However, the primary reason
States advances for concluding that his confession was not
voluntary—the kick or kicks he said he endured
when being taken into custody—is an event that the
magistrate judge determined did not take place. Like-
wise, the magistrate judge rejected States's contention
that two officers attempted to question States while still
at the arrest scene and concluded that no interrogation
took place until after States was provided with *Miranda*

warnings. And insofar as he argues that the presence of numerous officers on the scene rendered involuntary any subsequent confession, the argument gains little traction. Make no mistake, the concern that States identifies informed the Court's holding in *Miranda*. "An individual swept from familiar surroundings into police custody, surrounded by antagonistic forces, and subjected to . . . techniques of persuasion . . . cannot be otherwise than under compulsion to speak." *Miranda*, 384 U.S. at 461. Yet, crediting the finding that no questioning occurred until after warnings were provided—again, States advances no good reason to cast the finding aside—leads only to the conclusion that law enforcement took the steps designed to ensure that States's statements to law enforcement were voluntary. *Id.* at 468 ("[T]he warning will show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it."). States has not contended that any waiver of his *Miranda* rights was not knowing or voluntary, *see Moran v. Burbine*, 475 U.S. 412, 421 (1986), and on these facts the argument would not succeed. In sum, this is not the sort of extremely rare case, *e.g., Puckett*, 129 S. Ct. at 1429 *(quoting United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)), that satisfies the plain error standard.

**2.  Sixth Amendment**

Prior to his October 2002 arrest, the government filed a criminal complaint charging States with multiple violations of federal criminal law. States contends that the

complaint constituted formal judicial proceedings such that Sixth Amendment protections come into play. Therefore, his statements should be suppressed whether or not coerced or *Miranda*-compliant. All of our sister circuits to have examined the issue have concluded that the mere filing of a federal criminal complaint does not trigger the right to counsel. *See United States v. Boskic*, 545 F.3d 69, 83 (1st Cir. 2008)); *United States v. Duvall*, 537 F.2d 15, 22 (2d Cir. 1976) (Friendly, J.); *United States v. Alvarado*, 440 F.3d 191, 200 (4th Cir. 2006); *United States v. Moore*, 122 F.3d 1154, 1156 (8th Cir. 1997); *United States v. Pace*, 833 F.3d 1307, 1310-12 (9th Cir. 1987); *United States v. Langley*, 848 F.2d 152, 153 (11th Cir. 1988) (per curiam). A recent ruling by the Supreme Court removes any doubt about whether those cases were rightly decided.

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The amendment embodies "a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself." *Maine v. Moulton*, 474 U.S. 159, 169 (1985) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 462-63 (1938)). After the right attaches, an accused has the right to counsel at "critical stages" in the proceedings against him. *Iowa v. Tovar*, 541 U.S. 77, 80 (2004). The Supreme Court has explained that the right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187 (1984). The question is whether filing a criminal complaint under Rule 3 of the Federal Rules

of Criminal Procedure constitutes the initiation of adversary judicial proceedings. The Supreme Court's holding in *Rothgery v. Gillespie County*, *Texas*, 554 U.S. 191 (2008), answers the question: "[A] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, *marks the start* of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Id.* at 213 (emphasis added). Thus, in the federal system, the initial appearance, Fed. R. Crim. P. 5, marks the point at which interrogations by law enforcement cease to be controlled by the Fifth Amendment and begin to be governed by the Sixth Amendment. States did not enjoy the latter amendment's protections at the time of his interrogation.

Of course, even if States's legal position were the law, his case would still be undermined by the facts. The Supreme Court recently reminded us that "the Sixth Amendment right to counsel may be waived . . . whether or not [the defendant] is already represented by counsel . . . . And when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick." *Montejo v. Louisiana*, 129 S. Ct. 2079, 2085 (2009). The ineffectively assailed facts here are that States never asserted his right to counsel or his right to remain silent and that, when questioned for the first time, States was given *Miranda* warnings and then made self-incriminating statements. To paraphrase *Montejo*, that would have "done the trick." In sum, we agree with the district court that States's Sixth

Amendment rights were not violated and his statements should not have been suppressed.

**B. Joinder of Offenses**

States's next argument is that the counts related to possessing firearms with obliterated serial numbers and the circumstances surrounding his arrest—his decision not to go quietly—were misjoined with the other gun-related, drug-related, and racketeering offenses. He also argues that joinder was prejudicial. Normally, we review a claim of misjoinder de novo and review a claim that joinder was prejudicial for abuse of discretion. *United States v. Ross*, 510 F.3d 702, 710 (7th Cir. 2007). In this case, however, both arguments have been waived (rather than forfeited), precluding appellate review. *See United States v. Pineda-Buenaventura*, 622 F.3d 761, 766 n.2 (7th Cir. 2010) (explaining that forfeited issues are those "not raised negligently or accidentally"); *United States v. Taylor*, 637 F.3d 812, 816 (7th Cir. 2011) (forfeited claims are reviewed for plain error). However, the distinction between waiver versus forfeiture by reference to litigation conduct in the district court—the chief dispute between the parties—matters little. States waived his misjoinder argument *with us* by arguing in his opening brief only that joinder was prejudicial. *See United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007). As to prejudicial joinder, States falls far short of the showing we require before a new trial is warranted.

Under Federal Rule of Criminal Procedure 8(a), an indictment or information may charge multiple offenses

if they are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."[1] We look to the face of the indictment in determining whether joinder was proper and we construe the rule broadly, "in the interest of conserving judicial resources and avoiding costly, duplicative trials." *United States v. Blanchard*, 542 F.3d 1133, 1141 (7th Cir. 2008). While Rule 8(a) speaks to whether joinder of charges is proper, a defendant may nonetheless move to sever charges if combining them would prejudice him. Fed. R. Crim. P. 14(a); *United States v. Rollins*, 301 F.3d 511, 517 (7th Cir. 2002). Still, a defendant cannot challenge the decision to try multiple counts together whenever he so chooses. Under Rule 12(b)(3), certain motions must be filed prior to trial. Among them are motions alleging a defect in the indictment (*e.g.*, misjoinder) and motions to sever charges under Rule 14. *See* Fed. R. Crim. P. 12(b)(3)(B), (b)(3)(D). If a defendant does not comply with Rule 12(b)(3), the motion is waived unless good cause can be shown. Fed. R. Crim. P. 12(e).

In this case, there is little question that States waived, rather than forfeited, his arguments. Prior to trial, he moved to sever his co-defendants under Rules 8 and 14. Both of those rules discuss joinder and severance based

---

[1] The government has not argued that Rule 8(a) does not apply because this was a multi-party case. *See Ross*, 510 F.3d at 710 n.2. We take up the issue of waiver only as it has been argued to us.

on defendants *and* charges. Moving to sever on one ground but not the other suggests that the decision was intentional. The conclusion is bolstered here because one of States's co-defendants did file a motion to sever charges. And in ruling on the motion, the district court noted that States had not moved to sever on that basis. States made no response to the district court at that time. Having had the issue of severing charges brought to his attention, States did not seek to have the charges severed at the close of trial before the jury returned a verdict. *See United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010) (failure to renew a motion to sever generally results in waiver). The rule that parties generally waive severance arguments by failing to *renew* their motions has the salutary "effect of discouraging strategic choices by criminal defendants who would prefer to wait for a verdict before renewing their severance arguments." *Rollins*, 301 F.3d at 518. The concern that informs our waiver rule is implicated on these facts. Although States had not moved to sever prior to trial, he was aware of the tactic by the time of the close of evidence; he made no effort to have the charges severed until after the verdict. By keeping his powder dry, States waived both his misjoinder and prejudicial joinder arguments.

Our conclusion disposes of the issue. Nonetheless, we note that States would not prevail even if he had, through his conduct in the district court, preserved the issue. His opening brief with us develops an argument only with respect to prejudicial joinder. Therefore, the misjoinder argument would have been waived a second

time. *Dabney*, 498 F.3d at 460. And a plain error standard, States's best-case scenario, would do little to help his prejudicial joinder argument. Contending that the "circumstances relating to [the counts at issue] were separate, distinct, and unrelated to" the other counts does little work on his behalf. If the evidence of the crimes was distinct, then there is little risk that the jury used evidence of one crime as evidence of another. *United States v. Coleman*, 22 F.3d 126, 135 (7th Cir. 1994) (upholding a decision not to sever charges where "[t]he incidents were discrete as was the proof offered at trial"). The more serious contention, in the abstract, is that the jury might have been prejudiced against States on the drug-related and racketeering counts by the allegation that States attempted the murder of a federal agent. On these facts, at least, we are unpersuaded, because States offers little more than the assertion that he was prejudiced. The proposition is far from self-evident.

To obtain a new trial for prejudicial joinder under Rule 14, a "defendant must be able to show that the denial of severance 'caused him actual prejudice in that it prevented him from receiving a fair trial; it is not enough that separate trials may have provided him a better opportunity for an acquittal.'" *United States v. Quilling*, 261 F.3d 707, 715 (7th Cir. 2001) (quoting *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998)). The claim that a charge of attempted murder by itself resulted in prejudicial spillover with respect to the other charges is the sort of "garden variety side effect" present in every case in which multiple counts are joined. *See United States v. Boulanger*, 444 F.3d 76, 88 (1st Cir. 2006).

Although States does not present extensive argument on the matter, we perceive little basis for concluding that he was deprived of a fair trial. First, the jury was instructed to consider each count separately, and we presume that the jury did so. *United States v. Lewis*, 567 F.3d 322, 328 (7th Cir. 2009) (absent evidence to the contrary "we presume that the jury limited its consideration of the testimony in accordance with the court's instruction") (quoting *United States v. Mallett*, 496 F.3d 798, 802 (7th Cir. 2007)). The presumption can be overcome, but this is not a case where, for example, the jury might have been unable or unwilling to follow instructions because unrelated non-violent charges were joined with violent ones, such that the jury might have reached the conclusion that the defendant "was a bad and dangerous person." *Cf. United States v. Holloway*, 1 F.3d 307, 312 (5th Cir. 1993). The racketeering charges alleged numerous incidents of violent conduct—including States's use of violence in effecting a kidnapping and his killing of a victim's dog. What is more, the evidence appears to have been overwhelming. *See United States v. Jones*, 482 F.3d 60, 78 (2d Cir. 2006) (insufficient showing of prejudice where allegation of murder "while inflammatory, was not substantially more so than some of the other evidence"). Nor does this appear to be a case where a dearth of evidence on one or more joined counts created a risk of conviction based on evidence related only to other counts. *See Ross*, 510 F.3d at 711 (prejudice unlikely where evidence of guilt "was simply overwhelming"); *cf. also Schaffer v. United States*, 362 U.S. 511, 516 (1960) (noting that a trial judge should be "particularly sensitive" to the

possibility that prejudice will result when it turns out that a joined charge lacks support in evidence).

Had plain error applied, States would have had to overcome a significant hurdle in establishing that he was denied a fair trial. The matter has been waived, of course, but his mere contention that joinder was prejudicial, without more, would have been insufficient to meet his burden.

## C. Sentencing

The sentencing arguments that States makes do not merit extensive discussion. States argues first that 7 years of his sentence should run consecutively with his three concurrent life sentences. He bases his argument on the meaning of the so-called "except" clause of 18 U.S.C. § 924(c)(1)(A), a sentencing proviso lately the subject of a circuit-split. *See* 18 U.S.C. § 924(c)(1)(A) (imposing a mandatory term of imprisonment "[e]xcept to the extent that a greater minimum sentence is otherwise provided by [§ 924(c)] or by any other provision of law"). The argument is that, because one of his convictions was for using or carrying a firearm in relation to a drug trafficking crime with a higher mandatory minimum than the gun offense, the sentence for the drug crime effectively erases the sentence for the gun offense (including its consecutive nature). He concedes that he would still be subject to two consecutive sentences of 25 years each for his other § 924(c)(1)(A) convictions. There is a circuit-split no longer, as the Supreme Court foreclosed the argument States makes in *Abbott v. United*

*States*, 131 S. Ct. 18, 23-24 (2010). The case was decided after States filed his opening brief, and it is dispositive of the issue. The district court properly concluded that all of the 57 years from his § 924(c)(1)(A) convictions should run consecutively with his three (concurrent) life terms of imprisonment.

Finally, States argues that the district court failed to consider one of his non-frivolous sentencing arguments and failed adequately to consider the statutory sentencing factors spelled out in 18 U.S.C. § 3553(a). Failure to do either would constitute procedural error. *E.g.*, *United States v. Scott*, 631 F.3d 401, 409 (7th Cir. 2011). The problem for States is that his contentions are belied by the record. States requested that the district court consider his difficult upbringing in meting out his sentence. The district court did precisely that. Addressing a letter that the judge received from States's mother, the judge said that the letter contained "a depressing description of a difficult and hard life . . . and I take that into consideration as well." However, the judge concluded that States lacked that capacity to empathize with other human beings or comply with society's rules. In sentencing terms, the district court considered the argument States offered against others of the statutory sentencing factors that district courts are required to consider. *See* 18 U.S.C. § 3553(a)(2)(C) (protection of public from further crimes), (a)(2)(B) (adequacy of sentence as means of deterrence). States may not like the outcome of the district court's consideration of his arguments, but the quality of analysis satisfies that which we require of district courts. There was no error here.

### III. Conclusion

For the reasons set forth above, the judgment of the district court is AFFIRMED.