**Filed with Classified**
**Information Security Officer**
CISO
Date 09/09/2016

In the
United States Court of Appeals
For the Seventh Circuit

No. 15-1175

REDACTED / CLEARED FOR PUBLIC RELEASE

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

C. GREGORY TURNER,

*Defendant-Appellant*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 572—Elaine E. Bucklo, *Judge*

ARGUED OCTOBER 26, 2015 — DECIDED SEPTEMBER 9, 2016

SUPPLEMENTAL CLASSIFIED OPINION — DECIDED SEPTEMBER 9, 2016

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* As noted in the general unclassified opinion in this case, Defendant Gregory Turner was convicted of willfully conspiring, with Prince Asiel Ben Israel, to provide services for Zimbabwean Specially Designated Nationals ("SDN's"), a group of government officials and re-

lated individuals deemed to be blocking the democratic processes or institutions of Zimbabwe. Both Turner and Ben Israel are U.S. persons.

This is the supplemental classified opinion addressing Turner's claims, on appeal, that the government's investigation violated the Foreign Intelligence Surveillance Act ("FISA") and that the obtained or derived evidence should have been suppressed. Having reviewed the unclassified and classified record, we find that the order of the district court denying suppression of the FISA evidence and its evidentiary fruits was proper.

## I. Background

Using the same approach as with the unclassified opinion, we begin with a brief synopsis of the relevant legal framework for Turner's claims under FISA. Then, we summarize the FISA collections against Turner and the pertinent procedural history.

### A. *FISA Legal Framework*

In 1978, Congress enacted FISA, Pub. L. 95-511, to establish procedures for electronic surveillance, physical searches, and other methods of information collection for foreign intelligence purposes. 50 U.S.C. § 1801 *et seq.* The statute has been amended several times, most recently in 2008, Pub. L. 110-261.

FISA authorizes electronic surveillance and physical searches either with or without a court order. Turner's case

only concerns FISA authorization with a court order, also known as a FISA warrant. §§ 1805, 1824.[1]

FISA established the Foreign Intelligence Surveillance Court ("FISC") to grant or deny government applications for a FISA warrant. § 1803, 1822. The statute also established the Foreign Intelligence Surveillance Court of Review ("FISCR") to review FISC denials of government applications for a FISA warrant. Id.

In order for the FISC to issue an order, it must find that the government met certain requirements, including establishing probable cause, certification, and proposed minimization procedures. §§ 1804(a), 1805(a), 1823(a), 1824(a). The FISC must find that the government demonstrated "probable cause" that the target "is a foreign power or an agent of a foreign power" and that each of the targeted facilities or properties is being used by a foreign power or an agent of a foreign power. §§ 1804(a)(3), 1805(a)(2), 1823(a)(3), 1824(a)(2). The FISC also must find that the government provided "written certification" from a high-level executive branch official that a "significant purpose" of the proposed surveillance or search "is to obtain foreign intelligence information." §§ 1804(a)(6), 1805(a)(4), 1823(a)(6), 1824(a)(4). Finally, the FISC must find that the government's proposed "minimization procedures" are reasonably designed "to minimize the acquisition and retention, and prohibit the dis-

---

[1] ██████████ FISA contains separate, but largely parallel, provisions governing electronic surveillance, 50 U.S.C. §§ 1801–1812, and physical searches, §§ 1821–1829.

semination of nonpublicly available information concerning unconsenting United States persons," as well as provide additional protections relating to information and communications involving U.S. persons. §§ 1801(h), 1804(a)(4), 1805(a)(3), 1821(4), 1823(a)(4), 1824(a)(3). If the FISC approves the application, the government must adhere to these proposed "minimization procedures."

If the FISA judge makes the necessary findings, he or she then issues an order authorizing the electronic surveillance or physical search. §§ 1805(a), 1824(a). The FISC order must contain specific information on the target, relevant location, type of information sought, means, duration, coverage, and applicable minimization procedures. §§ 1805(c)-(d), 1824(c)-(d).

The government may also use information obtained from or derived from a FISC order for criminal proceedings if it obtains advance authorization from the Attorney General and provides notice to the court and to each "aggrieved person" against whom the information is to be used. §§ 1806(b)-(d), 1825(c)-(e).

In response, the aggrieved person may move to discover the materials relating to the surveillance and search, "only where such disclosure is necessary to make an accurate determination of the legality of" the surveillance or search. §§ 1806(f), 1825(g). The aggrieved person may also move to suppress evidence obtained or derived from the surveillance or search if "the information was unlawfully acquired" or if it "was not made in conformity with an order of authorization or approval." §§ 1806(e), 1825(f). If the aggrieved person

████

files a motion to discover or suppress, and if the Attorney General certifies that "disclosure of any adversary hearing would harm the national security of the United States," then the district court must "review *in camera* and *ex parte*," the FISA materials and rule on the motion. §§ 1806(f)-(g), 1825(g)-(h).

### B. *FISA Collections*

On ████████, the FISC found probable cause to believe that ████████, ████ U.S. persons, were agents of ████ a foreign power. The FISC authorized electronic surveillance of ████████████
████████████

The FISC's initial authorization was for a period of ████ ████████████ After an additional application by the government, the FISC subsequently re-authorized the ████ ████████████ of the same facilities for an additional period of approximately ████ Together, these two orders covered the time period from ████ ████████

At trial, the government introduced evidence obtained or derived from the ████████████ ████████████

████

C. *Procedural History*

On August 20, 2013, the government provided notice to Turner that it "intends to offer into evidence, or otherwise use or disclose in any proceedings in this matter," information obtained or derived from ███████████ ███████████ conducted under FISA, pursuant to §§ 1806(c), 1825(d).

A week later, on August 27, 2013, a grand jury returned an indictment against Turner, charging the following: (1) Count One alleged conspiring to act in the United States as an agent of a foreign government without prior notification to the Attorney General, in violation of 18 U.S.C. §§ 371, 951(a); (2) Count Two alleged acting in the United States as an agent of a foreign government without prior notification to the Attorney General, in violation of 18 U.S.C. § 951(a); and (3) Count Three alleged willfully conspiring to provide services on behalf of, or for the benefit of, Zimbabwean SDNs, in violation of the IEEPA, 50 U.S.C. § 1705(c), and 31 C.F.R. §§ 541.201, 541.204, and 541.405.

On February 27, 2014, Turner filed a motion for disclosure of FISA materials and a motion to suppress evidence obtained or derived from FISA. The government responded to these motions with a classified brief and sealed appendix submitted *ex parte* to the district court and a redacted, unclassified version served to Turner. Additionally, the government filed a "Declaration and Claim of Privilege" by the Attorney General that declared, "it would harm the national security of the United States to disclose or hold an ad-

versarial hearing with regards to the FISA Materials," pursuant to §§ 1806(f), 1825(g).

On July 25, 2014, the district court, in a thorough and well-reasoned opinion, denied Turner's motion for disclosure and his motion to suppress.[2] The district court began by concluding that the ██████████████████████████ ████████ were "lawfully authorized," because the government presented sufficient evidence to the FISC to support a finding of probable cause that ████████ was the "agent of a foreign power." The court then determined that the lawfully authorized FISA warrants targeting ████████ were executed "in conformity with an order or authorization or approval" because the government had properly minimized its collections.

Turner's trial began on September 29, 2014. Ultimately, the jury acquitted Turner of Counts One and Two but convicted him of Count Three. The district court sentenced Turner to 15 months' imprisonment and one year of supervised release. Judgment was entered against Turner on January 21, 2015. Turner's appeal followed.

---

[2] On appeal, Turner does not challenge the district court's denial of his motion to disclose the FISA materials. Therefore, this claim is waived, and we do not address it. *See United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007) ("Because the argument was not raised or developed in the opening brief, it is waived.").

## II. ANALYSIS

On appeal, Turner claims that the government's investigation violated FISA and that the obtained or derived evidence should have been suppressed. First, Turner argues that the FISC erred in finding that the government met its probable cause and certification requirements. Second, Turner contends that after receiving the lawful FISC order, the government did not properly minimize its collections under FISA. Third, Turner contends that the FISA investigation violated his protected rights under the First Amendment.

### A. *FISC Order*

This court reviews *de novo* the district court's ruling on the propriety of the FISC's order. *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005). In other words, in reviewing the adequacy of a FISA application, this court conducts the same review as the FISC. *In re Grand Jury Proc. of Special Apr. 2002 Grand Jury*, 347 F.3d 197, 204 (7th Cir. 2003).

After reviewing the classified record, we hold that the FISC properly found that the government's application met the requirements of probable cause and certification under FISA.

1. *Probable Cause*

This court reviews the probable cause determination of the FISC *de novo*, *Dumeisi*, 424 F.3d at 578–79, although we note that some of our sister courts have applied a more deferential standard of review, *e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102, 130 (2d Cir. 2010) ("the established standard of judicial review applicable to FISA warrants is deferential").

According to FISA, the FISC must find that the government demonstrated probable cause that the target "is a foreign power or an agent of a foreign power" and that each of the targeted facilities or properties is being used by a foreign power or an agent of a foreign power. §§ 1804(a)(3), 1805(a)(2), 1823(a)(3), 1824(a)(2). We apply this statutory standard but acknowledge that some of our sister courts have sought to distinguish between probable cause under FISA and probable cause under a "typical criminal case." *E.g.*, *United States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011) ("[FISA's] probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power."). Even if there is a distinction between the two standards, it does not affect our analysis.

In the present case, the FISA applications by the government supported the FISC's probable cause finding that



████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

Additionally, the FISA applications supported the FISC findings of probable cause for the proposed ██████████ ████████████████████████████████████ The FISA applications included evidence showing that █████ ████████████████████████████████████ ████████████████████████████████████

Accordingly, the FISC properly found that the government demonstrated "probable cause" that ██████ was the "agent of a foreign power" and that the ██████████ ██████████████████ were "being used or about to be used" by ████

Turner contends that "FISA appears to require the communications subject to surveillance of a United States person must relate directly to activities involving international terrorism as defined in FISA." (Appellant Br. 38.) Turner misstates the law. FISA is not limited to activities involving international terrorism. FISA authorizes surveillance and searches based on probable cause that the target is an "agent of a foreign power," which relates to "any person" engaged in certain activities (or knowingly aids and abets a person so engaged) on behalf of a foreign power, including "clandestine intelligence gathering activities" and "enter[ing] the United States under a false or fraudulent identity ... or,

████████

while in the United States ... assum[ing] a false or fraudulent identity." §§ 1801(b)(2), 1821(1). These activities are listed *in addition* to "international terrorism." *Id.*

Turner also argues that if the sole purpose of the FISA warrant was to gather evidence for a criminal prosecution, "the intercept was improper." (Appellant Br. 38.)

Turner's argument is meritless. FISA, as amended in 2008, "eliminated any justification for the FISA court to balance the relative weight the government places on criminal prosecution as compared to other counterintelligence responses." *In re Sealed Case*, 310 F.3d 717, 735 (FISA Ct. Rev. 2002). In other words, while the government must "have a measurable foreign intelligence purpose, other than just criminal prosecution," the amended FISA statute "does not oblige the government to demonstrate to the FISA court that its primary purpose in conducting electronic surveillance is *not* criminal prosecution." *Id.* at 735–36 (alteration in original).

Here, as discussed, the FISA applications by the government supported the FISC's probable cause finding that ███████ was an "agent of a foreign power" because ████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ this clearly demonstrated "a measurable foreign intelligence purpose" and thus, Turner's argument fails.

Finally, Turner claims that the "FISA applications may contain intentional or reckless material falsehoods." (Appellant Br. 39.) In reviewing the unclassified and classified re-

cord, we have made "a meaningful effort to confirm the accuracy of the [FISA] application." *United States v. Daoud*, 755 F.3d 479, 494–95 (7th Cir. 2014) (Rovner, J., concurring) (characterizing this review as serving "the same interest … that a *Franks* motion serves"). This review assures us that the FISA applications did not contain intentional or reckless material falsehoods.

### 2. *Certification*

Turner also challenges the FISC's finding that the government properly certified that a "significant purpose of" the proposed surveillance or search "is to obtain foreign intelligence information." §§ 1804(a)(6), 1805(a)(4), 1823(a)(6), 1824(a)(4).

FISA expressly provides that, for surveillance or searches targeting U.S. persons, the FISC must ensure only that the government's certifications are "not clearly erroneous." §§ 1805(a)(4), 1824(a)(4).

In reviewing the adequacy of the FISA application, this court conducts the same review as the FISC, and our role "is not to second-guess the executive branch official's certification." *In re Grand Jury Proc.*, 347 F.3d at 204.

In this case, after reviewing the classified record, we find that the government's requisite certifications were proper. The government presented the FISC with sufficient evidence that ████████████████████████████████████ ████████████████████████████ the government's certifications were not "clearly erroneous."

## A. Minimization

Under FISA, after receiving lawful FISC orders, the government must employ "minimization procedures," proposed in its application, that are reasonably designed "to minimize the acquisition and retention, and prohibit the dissemination of nonpublicly available information concerning unconsenting United States persons," as well as provide additional protections relating to information and communications involving U.S. persons. §§ 1801(h), 1804(a)(4), 1805(a)(3), 1821(4), 1823(a)(4), 1824(a)(3).

The Attorney General has adopted Standard Minimization Procedures ("SMPs"), which are maintained on file with the FISC and incorporated by reference into every FISA application and order. These SMPs permit ███████ ████████████████████████████████████, with review to take place after the initial acquisition of the information.

In Turner's case, after receiving lawful FISC orders, the government properly minimized the FISA information it collected in accordance with the SMPs. The classified record shows that, before executing the FISC order, the FBI verified the facilities subject to the approved ██████████ ████████████████ and that, subsequently, the collections were conducted during the approved times using the least physical intrusion necessary. The classified record also indicates that only authorized and trained FBI personnel reviewed, translated, analyzed, and used the collected FISA information, and they did so with the purpose of determining whether the information reasonably appeared to meet the retention standard. Furthermore, it appears that any in-

formation assessed to meet the retention standard was further investigated, analyzed, and disseminated in accordance with the SMPs. Finally, the classified record provides particular and concrete evidence that only a percentage of the FISA collection met the SMP standard for retention and dissemination.

This is sufficient to demonstrate that the government properly minimized the information collected pursuant to its FISC order.

## B. *First Amendment*

Turner also claims that the FISA investigation violated his "protected First Amendment activity related to his belief in the wisdom and humanity in lifting economic sanctions against the Republic of Zimbabwe." (Appellant Br. 38.)

FISA provides "that no United States person may be considered a foreign power or an agent of a foreign power solely upon the basis of activities protected by the first amendment of the Constitution of the United States." 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A).

Turner's claim is meritless. In the present case, as discussed, the classified records show that the government established probable cause that ███████ was an agent of a foreign power, completely independent of any protected First Amendment activity. *See Dumeisi*, 424 F.3d at 578–79 (rejecting a First Amendment claim against FISA evidence by a publisher of an Arabic language newspaper because "the government provided probable cause that [the defendant]

was an agent of a foreign power entirely independent of any of his journalistic activities.").

## III. Conclusion

For the foregoing reasons, the order of the district court denying suppression of the FISA evidence and its evidentiary fruits was proper.